IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 21, 2026 Session

## SANTORY ALEXANDER JOHNSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County
No. 310462    Boyd M. Patterson, Judge[1]**

_____

**No. E2024-01836-CCA-R3-PC**

_____

The Petitioner, Santory Alexander Johnson, appeals from the Hamilton County Criminal Court's dismissal of his untimely petition for post-conviction relief. On appeal, the Petitioner argues that the post-conviction court erred by (1) finding he forfeited his right to counsel and requiring him to proceed pro se and (2) finding due process did not require the tolling of the statute of limitations. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

STEVEN W. SWORD, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and JOHN W. CAMPBELL, SR., JJ., joined.

Cameron Price, Chattanooga, Tennessee, for the appellant, Santory Alexander Johnson.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Coty Wamp, District Attorney General; and Paul O. Moyle, IV, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.    FACTUAL AND PROCEDURAL HISTORY

#### A. TRIAL

---

[1] We note that on March 28, 2022, Governor Bill Lee appointed the Honorable Tom Greenholtz, the initial post-conviction judge, to this court. The case was ultimately reassigned to the Honorable Boyd Patterson.

On February 19, 2014, a Hamilton County grand jury returned an indictment charging the Petitioner with one count each of first degree murder and unlawful possession of a firearm by a convicted felon. *State v. Johnson*, No. E2017-00361-CCA-R3-CD, 2018 WL 3603045, at *1 (Tenn. Crim. App. Feb. 27, 2018), *perm. app. denied* (Tenn. Dec. 5, 2018). The latter charge was dismissed before trial. *Id*. The evidence adduced at the Petitioner's trial established that on the evening of October 4, 2013, the Petitioner hosted a gathering of approximately thirty people at his home to play games, gamble, and drink alcohol. *Id*. at *2-3. The victim, who witnesses described as a longtime friend of the Petitioner, attended this gathering. *Id*. at *1. At approximately 10:00 p.m., the victim texted Amber Rushing, the mother of his children, with whom he lived, and asked if she could pick him up from the party. *Id*.

Deontra Balding, the victim's cousin, drove Ms. Rushing and several of the victim's relatives, including the victim's grandmother, to collect the victim from the Petitioner's home. *Id*. at *2. When the group arrived, Mr. Balding parked his vehicle in the street to wait for the victim. *Id*. The Petitioner, who stood outside his home, informed Mr. Balding that he needed to move his vehicle from the middle of the street. *Id*. When Mr. Balding laughed in response, the Petitioner withdrew a firearm and fired it into the air above the vehicle. *Id*. The victim, having witnessed this encounter, approached the Petitioner to inform him that his relatives, including his grandmother, were inside the vehicle. *Id*. The Petitioner apologized, and the victim and his relatives drove away. *Id*.

Approximately two minutes later they arrived at another house, and the victim announced he would return to the Petitioner's home to "see what all that was for." The victim left driving Ms. Rushing's car. *Id*. at *3. Fearing the victim and the Petitioner might get into an "altercation," Ms. Rushing and the victim's cousin followed the victim to the Petitioner's home shortly after the victim left. *Id*. at *2-3. Upon arriving, the couple found the victim lying in the street near the vehicle he had driven to the Petitioner's home. *Id*. Two of the Petitioner's guests testified that they saw the Petitioner and the victim arguing shortly after the victim returned to the Petitioner's home, that the victim walked back to his vehicle, and that the Petitioner subsequently withdrew his firearm and shot at the victim multiple times as he attempted to enter his vehicle. *Id*. at *4. A medical examiner testified that the victim sustained between four and five gunshot wounds and that these wounds caused his death. *Id*. at *6.

Upon this proof, the jury convicted the Petitioner of the lesser-included offense of second degree murder. *Id*. Following a sentencing hearing, the trial court imposed a sentence of forty years' incarceration. *Id*. The Petitioner timely appealed, raising claims of prosecutorial misconduct during closing argument and of trial-court error in the admission of evidence and at sentencing. *Id*. This court affirmed the trial court's judgment in all respects. *Id*. at *1, *13. Pursuant to Tennessee Rule of Appellate Procedure 11, the

Petitioner timely filed an unsuccessful application for permission to appeal to the Tennessee Supreme Court. *State v. Johnson*, No. E2017-00361-SC-R11-CD (Tenn. Dec. 5, 2018) (Order).

## B. POST-CONVICTION

On September 10, 2020,[2] the Petitioner filed two letters and several attachments in the post-conviction court. The first letter, styled "Post[-]Conviction Relief," requested the post-conviction court hold a hearing to help him "understand the [t]imeline [i]ssue." The Petitioner also asserted he had experienced difficulties accessing the prison library due to COVID-19 restrictions. In his second letter, the Petitioner stated that trial counsel withdrew from his case following his trial and that the trial court thereafter appointed appellate counsel. The Petitioner alleged that in September 2018, after this court affirmed the trial court's judgment, appellate counsel sent him a copy of his application for permission to appeal pursuant to Tennessee Rule of Appellate Procedure 11. He asserted that appellate counsel did not communicate with him for a year thereafter, so he "decided to write [t]he Board of Professional Responsibility" and to appellate counsel's law firm.[3] He alleged that appellate counsel responded by letter on March 24, 2020, informing him that his "appeal was denied." He further alleged that appellate counsel did not inform him until August 25, 2020, that his "time had run out" to file a petition for post-conviction relief. The Petitioner's letter also raised several claims of error regarding the jury and ineffective assistance of counsel.

---

[2] Tennessee Rule of Criminal Procedure 49(d)(1), colloquially referred to as the "prison mailbox rule," provides that

> If a paper required or permitted to be filed pursuant to the rules of criminal procedure is prepared by or on behalf of a pro se litigant incarcerated in a correctional facility and is not received by the court clerk until after the deadline for filing, the filing is timely if the paper was delivered to the appropriate individual at the correctional facility within the time set for filing. This provision also applies to service of papers by such litigants pursuant to the rules of criminal procedure.

It is unclear from the record when the Petitioner mailed the relevant letters and attachments to the post-conviction court. The first letter is dated on August 18, 2020, and the second is dated August 30, 2020. It appears from the record that the post-conviction court received and filed them as a collective filing on September 10, 2020. A litigant bears the burden of establishing his or her compliance with the "prison mailbox rule." Tenn. R. Crim. P. 49(d)(3). The Petitioner does not assert his petition would have been timely under the "prison mailbox rule," and he does not appear to take issue with the post-conviction court's finding in its September 14, 2020 preliminary order that the petition was filed on September 10, 2020.

[3] The record does not include copies of these communications.

As attachments, the Petitioner included several letters he received from appellate counsel. In one letter, dated March 24, 2020, appellate counsel stated, "As you should be aware from communication from my previous office, I completed your appeal. The Court of Criminal Appeals denied your appeal in an opinion published July 27, 2018. I applied to the Supreme Court for permission to appeal, and it was denied." Appellate counsel further stated that the Tennessee Supreme Court's denial of the Petitioner's application for permission to appeal "completed [her] representation."

In an April 24, 2020 letter, addressed from appellate counsel to the Director of the Tennessee Board of Professional Responsibility's Consumer Assistance Program ("BPR") and to the Petitioner as a carbon copy, appellate counsel stated she had retrieved and reviewed the Petitioner's file. Appellate counsel further stated,

> As I previously replied, [the Petitioner] should have been aware from communication from my previous office of the completion of his appeal and denial of his Rule 11 application. Upon a careful review, I [cannot] be certain whether he received a copy of his file. Out of an abundance of caution, in the interests of justice, and to assist in his stated intention to prepare a motion to extend the time to file for post-conviction relief, I am mailing his file to him contemporaneously with this response.

In an August 4, 2020 letter, addressed from appellate counsel to the Petitioner, appellate counsel stated she had received a letter from the Petitioner informing her that he had not had "the usual access to the library" and was unable to review the copy of his file she sent.[4] Appellate counsel stated she would attach both a hard copy and an electronic copy of the Petitioner's file, along with the letter. Appellate counsel further stated,

> I am unclear as to what timeline you are referring in your letter. As you stated in your letter of April 24, 2020,[5] you recognize that the time limit for filing post-conviction relief is within one (1) year. You should also be aware that the Tennessee Supreme Court denied your application for permission to appeal on December 5, 2018. I understand from your previous communication that you intend to ask for an extension as the time limit has expired. I hope the recounting of the relevant timeline is of assistance to you in understanding the timeline.

---

[4] Appellate counsel stated this letter was dated July 30, 2020. The record does not include a copy of this communication.

[5] The record does not include a copy of this communication.

On September 14, 2020, the post-conviction court entered an order construing the Petitioner's filing as an untimely and unverified petition for post-conviction relief. The post-conviction court found that the Petitioner had "possibly" stated a ground for due process tolling of the statute of limitations in which to file a timely petition for post-conviction relief by asserting that appellate counsel did not promptly inform him of the Tennessee Supreme Court's denial of his application for permission to appeal. The post-conviction court further found that determining whether due process required tolling would require a hearing.

However, the post-conviction court stated it was not yet ready to hold a hearing on that issue because the petition was unverified, raised several non-colorable claims for relief, and the Petitioner was unrepresented. Accordingly, the post-conviction court ordered the Petitioner to file a verification of the truth of the allegations in his petition, or to amend his petition for post-conviction relief to include such verification, by December 1, 2020. The post-conviction court also ordered the Petitioner to file an affidavit of indigency if he was indigent and sought the appointment of post-conviction counsel. The post-conviction court stated it would, upon receipt of those filings, schedule an evidentiary hearing to determine "the timeliness of the petition."

At some point thereafter, the Petitioner filed a letter[6] with the post-conviction court, dated November 18, 2020, and addressed to the Hamilton County Criminal Court Clerk, in which he asserted that he had "tried to get [an a]ffidavit of [i]ndigence form" but had experienced difficulties due to "restrictions." On January 8, 2021, the post-conviction court appointed first post-conviction counsel ("first counsel") following a status hearing. On February 4, 2022, the post-conviction court entered an order granting first counsel's motion to withdraw and appointing substitute counsel ("second counsel"). In January 2023,[7] the Petitioner, through second counsel, filed an amended petition for post-conviction relief, in which he presented several claims of ineffective assistance of counsel and a claim of prosecutorial misconduct. He also asserted that despite the untimeliness of his initial petition, the letters he sent inquiring into the status of his case proved that he had been diligently pursuing his right to post-conviction relief.

On June 3, 2023, the State filed a motion to dismiss the petition as untimely, arguing that the Petitioner had failed to specifically plead any basis for due process tolling pursuant to Tennessee Code Annotated section 40-30-102. The State also argued that the Petitioner had not proven he was diligent in pursuing his right to file a post-conviction petition. The

---

[6] The file stamp on this letter is illegible.

State also filed a response denying the Petitioner's claims of ineffective assistance of counsel on July 6, 2023.

On August 3, 2023, the Petitioner filed a pro se motion "[a]sking [a]gain" for the removal of second counsel, alleging that second counsel "d[id]n't meet the standards."[8] On October 27, 2023, the post-conviction court entered an order that stated that second counsel had also filed a motion to withdraw.[9] The post-conviction court granted second counsel's motion and appointed substitute post-conviction counsel ("third counsel").

On December 20, 2023, the Petitioner filed a pro se letter with the post-conviction court. The Petitioner included several attachments to this letter, which he requested the Hamilton County Criminal Court Clerk "file as facts" in support of various claims of ineffective assistance of counsel. Among these attachments, the Petitioner included a September 15, 2020 letter from the BPR, which stated, in relevant part, "We have reviewed your letter[10] about wanting to file for post-conviction relief, but there is a deadline issue. If you did not receive notice of denial from your former attorney, it was probably due to your changing prisons so that mail did not reach you." The letter reiterated that the BPR was not permitted to provide specific legal advice. The Petitioner also attached a copy of his inmate mail history, which showed no incoming "legal" communication between October 15, 2018, and March 16, 2020.

On June 12, 2024, the Petitioner filed a pro se "Motion to Remove Lawyer." He asserted third counsel had a "conflict of [i]nterest" in determining what should or should not be included as an exhibit to his post-conviction petition. On July 12, 2024, third counsel filed a motion to withdraw, asserting a complete and irreparable breakdown between herself and the Petitioner. In an order entered that same day, the post-conviction court granted third counsel's motion and appointed substitute post-conviction counsel ("fourth counsel").

On September 3, 2024, the Petitioner filed a pro se handwritten "Motion for Material for Post[-]Conviction Relief." In this motion, the Petitioner asserted that he "require[d] access to all case material" and requested the post-conviction court compel trial counsel's presence at a hearing to answer questions regarding his petition for post-conviction relief. The Petitioner further stated that "every lawyer [appointed had] refused" to provide him with materials to "prepare" and asserted that "[n]o [o]ne is helping."

---

[8] The record does not include a copy of any prior request for second counsel's removal by the Petitioner.

[9] The record does not include a copy of second counsel's motion to withdraw.

[10] The record does not include a copy of any letter written by the Petitioner to the BPR.

On September 5, 2024, fourth counsel filed a motion to withdraw. In this motion, fourth counsel asserted that he had scheduled a meeting on September 5, 2024, with the Petitioner to prepare for the Petitioner's September 19, 2024 court date. Fourth counsel stated that at the time the meeting was scheduled to begin, he was informed by jail staff that the Petitioner had refused to meet with fourth counsel. In an undated minute entry, the post-conviction court denied fourth counsel's motion to withdraw and scheduled a status hearing for October 28, 2024. The record does not include a transcript of the October 28, 2024 status hearing or a subsequently entered scheduling order. An evidentiary hearing was held on December 2, 2024, to determine the petition's timeliness.

At the outset of the December 2, 2024 evidentiary hearing, fourth counsel renewed his motion to withdraw "on the same basis." He stated that he went to the jail to attempt to meet with the Petitioner the previous evening, but the Petitioner refused to meet with him. The Petitioner responded that he had refused to meet with fourth counsel because the meeting was scheduled at 9:00 p.m. on a Sunday and because he was afraid he would be stabbed if he left his "pod" at that time. Thereafter, the post-conviction court stated,

> All right, [fourth counsel], you've been very patient with this[,] and I appreciate your willingness to continue working with [the Petitioner]. The motion to withdraw is sustained. Thank you.
>
> All right, [the Petitioner], have a seat at the table, we're going to have your hearing today. I told you last time that if you can't get along with [fourth counsel] or work with him, that you'd be representing yourself, so you can have a seat at counsel table.

The parties then addressed the issue of due process tolling.

After discussing the case's procedural history, the State argued that the Petitioner's initial petition was untimely. The State also noted that the petition was unverified and that the post-conviction court "granted an additional largess to the legislative largess that is post[-]conviction relief" by its September 14, 2020 order permitting the Petitioner to verify his petition by December 1, 2020. The State contended that, notwithstanding this deadline, the Petitioner neglected to amend or verify his petition until he filed his amended petition on January 17, 2023. The State argued that this delay, coupled with the length of the delay between the Tennessee Supreme Court's denial of the Petitioner's application for permission to appeal and the filing of his initial petition, indicated the Petitioner had not been diligently pursuing his right to file a post-conviction petition. Accordingly, the State asserted that due process did not require the tolling of the statute of limitations and requested that the post-conviction court dismiss the petition as untimely.

The Petitioner introduced his inmate mail history as an exhibit to the hearing. He asserted that this document, which indicated he did not receive "legal" mail between October 15, 2018, and March 16, 2020, established that appellate counsel did not promptly inform him that the Tennessee Supreme Court denied his application for permission to appeal on December 5, 2018. He argued that appellate counsel only informed him of the status of his appeal and that the statute of limitations for filing a petition for post-conviction relief had expired after he wrote to the BPR. He contended that any delay in timely filing his petition was not his fault. He also argued that COVID-19 restrictions prohibited him from complying with the December 1, 2020 deadline to verify or amend his petition set by the post-conviction court's September 14, 2020 order.

Following arguments, the post-conviction court found that due process tolling was not warranted because the Petitioner had failed to prove he was pursuing his rights diligently. The post-conviction court reasoned that the Petitioner had "been given lots of opportunities to work with a lawyer to see if extraordinary relief [was] warranted," including fourth counsel, whom the Petitioner "refused to meet with." The post-conviction court also found that the Petitioner's inmate mail history indicated he received the post-conviction court's September 14, 2020 order on September 22 or soon thereafter and that the Petitioner nevertheless did not comply with its deadline. Accordingly, the post-conviction court dismissed the petition as untimely. This timely appeal followed.

## II.  ANALYSIS

On appeal, the Petitioner argues that the post-conviction court erred by finding he had forfeited his right to counsel and by dismissing his petition as untimely, maintaining that due process required tolling the statute of limitations. The State responds that the record is inadequate to permit appellate review of the former claim and that the post-conviction court appropriately dismissed the petition as untimely. We agree with the State.

### A.  FORFEITURE OF COUNSEL

The Petitioner first argues the post-conviction court erred by concluding he forfeited his right to counsel and by requiring him to proceed pro se at the December 2, 2024 evidentiary hearing. He contends there is no proof of the voluntary waiver of his right to counsel and, further, that his behavior towards his appointed counsel did not rise to the level of misconduct required to find he had involuntarily waived his right to counsel through forfeiture. The Petitioner also argues the post-conviction court erred by requiring him to immediately represent himself at the December 2, 2024 hearing. The State responds that the record is inadequate to permit appellate review of this claim.

A post-conviction petitioner has a statutory right to counsel, but not a constitutional right. *See* Tenn. Code Ann. § 40-30-107(b)(1); *see also State v. House*, 911 S.W.2d 705, 712 (Tenn. 1995) ("There being no constitutional right to counsel in post-conviction proceedings, it follows that there is no constitutional right to effective assistance of counsel in post-conviction proceedings."). This statutory right provides that when a petitioner establishes his indigency and requests the assistance of counsel, the post-conviction court must appoint post-conviction counsel. Tenn. Code Ann. § 40-30-107(b)(1). This right, however, does not place a post-conviction petitioner in the "same shoes as the criminally accused." *Frazier v. State*, 303 S.W.3d 674, 682 (Tenn. 2010). That is, post-conviction counsel serves "not to protect [a post-conviction petitioner] from the prosecutorial forces of the State, but to shape their complaints into the proper legal form and to present those complaints to the court." *Id.* (quoting *People v. Owens*, 139 Ill.2d 351, 151 Ill. Dec. 522, 564 N.E.2d 1184, 1190 (1990) (internal quotation marks omitted). To that end, post-conviction counsel serves to assist a petitioner in asserting "all available grounds for relief and fully and fairly litigat[ing] these grounds in a single post-conviction proceeding." *Leslie v. State*, 36 S.W.3d 34, 38 (Tenn. 2000).

A trial court may determine a petitioner has forfeited the right to counsel when a petitioner "utiliz[es] that right to manipulate, delay, or disrupt trial proceedings." *State v. Carruthers*, 35 S.W.3d 516, 549 (Tenn. 2000); *see Watson v. State*, No M2020-01693-CCA-R3-PC, 2022 WL 480241, at *8 (Tenn. Crim. App. Feb. 17, 2022) (applying *Carruthers* in the context of a post-conviction proceeding), *no perm. app. filed*. We review a post-conviction court's determination that a post-conviction petitioner has forfeited his or her right to counsel for an abuse of discretion. *Leslie*, 36 S.W.3d at 37-38.

However, the Petitioner has failed to prepare an adequate record to facilitate appellate review. At the December 2, 2024 hearing, the post-conviction court granted fourth counsel's renewed motion to withdraw on the grounds that the Petitioner had, again, refused to meet with fourth counsel to prepare for the hearing. Referencing a previous hearing, the post-conviction court stated, "I told you last time that if you can't get along with [fourth counsel] or work with him, that you'd be representing yourself, so you can have a seat at counsel table." The record reflects that the post-conviction court addressed the Petitioner's relationship with counsel at the previous hearing, but the record does not contain a transcript of that hearing or any other statement of the evidence.

On appeal, the appellant bears the burden of compiling, preparing, and submitting a record adequate for review, such as is "necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). This burden includes the obligation to submit a transcript of any proceeding that is the subject of the appellant's assignment of error or, if no transcript is available, a statement of the evidence. Tenn. R. App. P. 24(b), (c); *see also State v. Ballard*,

855 S.W.2d 557, 560 (Tenn. 1993). "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." *State v. Brown*, 373 S.W.3d 565, 571 (Tenn. Crim. App. 2011) (quoting *State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991)) (internal quotation marks omitted).

In the absence of any transcript or statement of the evidence regarding the previous hearing, we cannot determine the merits of the Petitioner's claim that the post-conviction court abused its discretion in finding he had forfeited his right to counsel. When a record is incomplete, we are "precluded from considering the issue" and we "must conclusively presume that the ruling of the [post-conviction] court was correct in all particulars." *State v. Miller*, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987).

Relatedly, the Petitioner asserts that the post-conviction court erred in requiring him to immediately represent himself at the December 2, 2024 hearing. He contends that the post-conviction court should have granted a continuance to allow the Petitioner time to prepare to represent himself and to argue that due process required tolling the statute of limitations. We review a lower court's decision to grant or deny a continuance for an abuse of discretion. *State v. Hester*, 324 S.W.3d 1, 35 (Tenn. 2010). However, it is unnecessary for us to determine whether the post-conviction court abused its discretion because the Petitioner has waived appellate review of this claim by failing to request a continuance. Appellate relief extends only to those issues properly presented and preserved for such review, *see State v. Bristol*, 654 S.W.3d 917, 925 (Tenn. 2022), and "[i]ssues not addressed in the post-conviction court will generally not be addressed on appeal," *Walsh v. State*, 166 S.W.3d 641, 645 (Tenn. 2005). *See also* Tenn. R. App. P. 36(a) (providing that the appellate courts "shall grant the relief on the law and facts to which the party is entitled or the proceeding otherwise requires" but that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Furthermore, plain error relief is not available during post-conviction proceedings. *Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020) ("[T]he plain error rule, which would otherwise permit an appellate court to address the issue sua sponte, may not be applied in post-conviction proceedings to grounds that would otherwise be deemed waived or previously determined.") (quoting *Grindstaff v. State* 297 S.W.3d 208, 219 (Tenn. 2009)) (internal quotation marks omitted). Accordingly, the Petitioner has also waived appellate review of this claim.

### B. DUE PROCESS TOLLING

The Petitioner also claims the post-conviction court erred in dismissing his petition as untimely, maintaining that he established due process required tolling of the statute of limitations. He asserts that he diligently pursued his right to seek post-conviction relief as

soon as he learned that the Tennessee Supreme Court had denied his application for permission to appeal, and that any delay in timely filing his petition was due to attorney misconduct. The State responds that the post-conviction court appropriately dismissed the petition as untimely.

The Post-Conviction Procedure Act provides relief only when a petitioner's "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The Act further provides that a petition for post-conviction relief is barred unless filed "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final." *Id.* § 40-30-102(a). If it is apparent from the petition, any exhibits, and the record of the case that the petition was not filed within the limitations period, then the statute provides for summary dismissal by the post-conviction court. *Id.* § 40-30-106(b). As noted above, the Tennessee Supreme Court denied the Petitioner's application for permission to appeal pursuant to Tennessee Rule of Appellate Procedure 11 on December 5, 2018. Accordingly, the Petitioner had until December 5, 2019, to timely file a petition for post-conviction relief. His September 10, 2020 letter, which the post-conviction court construed as a petition for post-conviction relief, was therefore untimely by more than nine months.

"Time is of the essence" in filing a petition for post-conviction relief, and compliance with the one-year statute of limitations "is a condition upon [the] exercise" of the right to post-conviction relief. *Id.* § 40-30-102(a). Nevertheless, the Post-Conviction Procedure Act provides for three statutory exceptions to the timely filing requirement,[11] and the Tennessee Supreme Court has recognized that a petitioner's right to due process may also require the tolling of the statute of limitations in certain other circumstances. *Whitehead v. State*, 402 S.W.3d 615, 623 (Tenn. 2013). A petitioner seeking due process tolling of the statute of limitations must prove both "that he or she has been pursuing his or her rights diligently" and "that some extraordinary circumstance stood in his or her way and prevented timely filing." *Bush v. State*, 428 S.W.3d 1, 22 (Tenn. 2014). The Tennessee Supreme Court has recognized the following as such extraordinary circumstances: "(1) claims arising after the statute of limitations has expired; (2) claims based on mental incompetence that prevented the petitioner from complying with the statute of limitations; and (3) claims based on attorney misconduct." *Lowe v. State*, 703 S.W.3d 319, 331 (Tenn. Crim. App. 2024) (citing *Whitehead*, 402 S.W.3d at 623-24). When a petitioner fails to provide sufficient facts to prove that one of these limited circumstances prevented the timely filing of his or her post-conviction petition, a claim for due process tolling must fail,

---

[11] The parties agree that none of these statutory exceptions apply in this case.

and an untimely petition for post-conviction relief must be dismissed. *Lowe*, 703 S.W.3d at 331 (citing *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992)).

"Issues regarding whether due process required the tolling of the post-conviction statute of limitations are mixed questions of law and fact." *Whitehead*, 402 S.W.2d at 621 (citing *Smith v. State*, 357 S.W.3d 322, 355 (Tenn. 2011)). Under that standard of review, we review the post-conviction court's conclusions of law de novo, with no presumption of correctness. *Lowe*, 703 S.W.3d at 331. However, we are bound by its findings of fact unless the record preponderates against them. *Id*.

The Petitioner maintains that due process requires the tolling of the statute of limitations because of appellate counsel's misconduct. Claims based on attorney misconduct require proof that "the prisoner's attorney of record abandon[ed] the prisoner or act[ed] in a way directly adverse to the prisoner's interests, such as by actively lying or otherwise misleading the prisoner to believe things about his or her case that are not true." *Whitehead*, 402 S.W.3d at 631. Here, the Petitioner has not carried his burden of proving that he had been diligently pursuing his rights. He did not call appellate counsel to testify at the December 2, 2024 hearing. The only proof of her alleged abandonment was in the form of the Petitioner's prison mail history. The trial court appeared to accredit the Petitioner's prison mail history as it related to the date the Petitioner received the post-conviction court's September 14, 2020 order. Assuming, arguendo, that the inmate mail history is accurate and that the Petitioner received no "legal" correspondence from trial counsel between October 15, 2018 and March 27, 2020, he has still not endeavored to explain why he did not attempt to inquire into the status of his case at any point during the more than seventeen-month delay between then and his communications with the BPR in March 2020. *See Lautenschlager v. State*, No. W2008-00162-CCA-R3-PC, 2008 WL 4936716, at *3 (Tenn. Crim. App. Nov. 19, 2008) (denying due process tolling where the petitioner "fail[ed] to explain his lengthy delay in filing the petition for post-conviction relief."), *perm. app. denied* (Tenn. Apr. 27, 2009); *see also Wright v. State*, No. W2001-00386-CCA-R3-PC, 2001 WL 1690194, at *3 (Tenn. Crim. App. Dec. 17, 2001) (Tipton, P.J., dissenting) ("Absent any allegation to justify the petitioner's years of inaction, for example, counsel's continued assertion that the case was on appeal, an evidentiary hearing is unwarranted."), *no perm. app. filed*. Although he makes much of the fact that he promptly arranged for the shipment of his case file and filed his initial petition for post-conviction relief soon thereafter, he nevertheless has not sufficiently established that he diligently pursued his right to seek post-conviction relief.

We also note that the Petitioner alleged at the December 2, 2024 evidentiary hearing that he did not know the statute of limitations to file a post-conviction petition had expired because post-conviction counsel did not tell him. Inasmuch as the Petitioner argues that he is entitled to due process tolling due to appellate counsel's failure to render appropriate

advice to the Petitioner regarding post-conviction procedures, we note that this court has consistently held that such claims for due process tolling are unavailing. *See, e.g.*, *Taylor v. State*, No. W2014-00683-CCA-R3-PC, 2014 WL 6491076, at \*3 (Tenn. Crim. App. Nov. 20, 2014) (collecting cases), *perm. app. denied* (Tenn. March 12, 2015). "Short of active misrepresentation, however, we have never held that trial or appellate counsel's inadvertent or negligent failure to inform his or her client of the right to file a post-conviction petition constitutes ineffective assistance of counsel." *Smith v. State*, 357 S.W.3d (Tenn.2011). We find no error in the post-conviction court's dismissal of the petition as untimely.

## III.    CONCLUSION

Following our review of the record and based upon the foregoing analysis, we affirm the judgment of the post-conviction court.

s/ *Steven W. Sword*

STEVEN W. SWORD, JUDGE